NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| ROYALE LUAU RESORT, LLC, | ) | Hon. Harold A. Ackerman |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1342 (HAA) |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| KENNEDY FUNDING, INC., JEFFREY | ) | |
| WOLFER; JOSEPH WOLFER, | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Gregg D. Trautmann, Esq.
Robert T. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, LLC
262 E. Main Street
Rockaway, NJ 07866
*Attorneys for Plaintiff*

Paul Rowe, Esq.
Alan Naar, Esq.
GREENBAUM, ROWE, SMITH, RAVIN, DAVIS & HIMMEL, LLP
6 Becker Farm Road
Roseland, NJ 07601
*Attorneys for Defendants*


**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion to dismiss (Doc. No. 7) by Defendants

Kennedy Funding, Inc. ("KFI"), Jeffrey Wolfer, and Joseph Wolfer.  Specifically, Jeffrey Wolfer

and Joseph Wolfer (collectively "the Wolfers") move to dismiss all counts of Plaintiff Royal

Luau Resort, LLC's ("Royale") twelve-count Complaint.  By contrast, KFI seeks to dismiss all

1

counts except Counts 4 and 5, which allege "breach of contract" and "breach of the covenant of good faith and fair dealing," respectively.  For the following reasons, Defendants' motion is granted in part and denied in part.

### Background

According to the Complaint, KFI and its principals, the Wolfers, operate out of Hackensack, New Jersey and are engaged in the business of commercial real estate lending. Royale, a Florida limited liability corporation, was involved in a commercial real estate transaction that involved the proposed purchase and re-development of a certain tract of land in Panama City, Florida.  Specifically, Royale sought to construct, along the Gulf of Mexico, a 22-story, 495-unit condominium, with a 7-story parking deck and street-level retail shops.

In March 2005, Royale contacted KFI and sought to enter into a commercial loan transaction.  In early April 2005, Royale and KFI, executed a "Loan Commitment," which stated the amount of the loan to be $92,000,000.  KFI charged Royale $25,000 for the preparation of the Loan Commitment.  The Loan Commitment also stated that it became effective upon delivery to KFI of a signed copy, accompanied with the commitment fee in the amount of $2,760,000.[1]  The

---

[1] Royale's Complaint states in numerous places that the commitment fee is "Two Million Seven Hundred Sixty Dollars ($2,760,000)."  Ordinarily, this Court would resolve such conflicting language by relying on the written words, rather than the numbers.  Thus, the Court would conclude that the correct alleged amount of the fee was $2,000,760.  However, in this instance, the Court is able to determine the actual fee stated in the Loan Commitment because the Loan Commitment has been submitted to the Court as an exhibit to the Jeffrey Wolfer certification.  The Loan Commitment clearly states that the fee is "Two Million Seven Hundred Sixty Thousand Dollars ($2,760,000)."  Accordingly, the Court finds that the error committed in the drafting of Royale's Complaint was one of wording, not numbers, and the Court therefore will rely on the number used in parentheses in the Complaint.

Note also that the Court's reliance on the Loan Commitment does not constitute an

2

Loan Commitment stated that KFI would accept the fee in two installments: $500,000 at the time the commitment was signed, and the balance ($2,260,000) to be paid at the closing or upon election not to proceed to a closing.  On April 8, 2005, Royale wired the $500,000 portion of the commitment fee and the additional $25,000 fee for preparation of the Loan Commitment.

The Loan Commitment also stated that the basis of the loan contemplated was the "market value of the real estate Collateral as completed by KFI loan proceeds."  (Loan Commitment at 3.)  Furthermore, the Loan Commitment stated that KFI was not obligated to loan more than 60% of the appraised value and, in any event, no more than $92,000,000.  Royale's Complaint alleges that KFI and the Wolfers "instructed their appraiser from Cushman & Wakefield to provide a [sic] 'market value and disposition value estimates' of the real property."  (Compl. ¶ 60.)  The Cushman & Wakefield ("C&W") appraisal declared the market value of the property to be $29,700,000.  (Compl. ¶ 61.)  Royale alleges that this appraisal was not an "as completed" appraisal, but rather an "as intended" appraisal, which is a valuation of "the property as if all approvals and plans for development were in place and construction can begin," not as a completed condominium building.  (Compl. ¶ 63.)

In addition, C&W provided a "disposition value" appraisal of the property of $17,800,000.  This number was reached by applying a 40% discount to the "as intended" appraisal.  Royale alleges that KFI was aware that Royale was under contract to purchase the property for approximately $32,000,000.  Royale further alleges that KFI was aware that any loan

---

impermissible reference to matters outside the pleadings.  "Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'"  *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

based upon C&W's disposition value appraisal would be insufficient to allow Royale to purchase the property, much less re-develop it into a 495-unit condominium building.  Ultimately, KFI made a loan offer to Royale of $10,000,000.  Royale and KFI never closed on the subject loan.

Instead, on March 22, 2007, Royale filed the instant twelve-count Complaint.  Count One alleges violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act.  Count Two alleges unjust enrichment.  Count Three also alleges unjust enrichment.  Count Four alleges breach of contract.  Count Five alleges breach of the covenant of good faith and fair dealing.  Count Six alleges common law fraud.  Count Seven alleges violations of New Jersey's Consumer Fraud Act.  Counts Eight, Nine, Ten, Eleven and Twelve all seek some form of rescission or declaratory judgment on various grounds, e.g., illusory contract, void option contract, unconscionability, and impossibility of performance.

As previously mentioned, the Wolfers have moved to dismiss Royale's Complaint against them in its entirety, whereas KFI has moved to dismiss all but the breach of contract (Count Four) and breach of the covenant of good faith and fair dealing (Count Five) claims.  The Court will address Defendants' arguments seriatim.

### *Analysis*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief may be granted.  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting

*Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)); *see also, e.g.*, *Labov v. Lalley*, 809 F.2d 220, 221 (3d Cir. 1987).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 127 S. Ct. at 1974, 1965.  A court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter*, 489 F.3d at 177 ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.") (quoting *Evancho*, 423 F.3d at 351).

### A.    New Jersey Consumer Fraud Act (Count Seven)

In Count Seven, Royale alleges that Defendants violated the New Jersey Consumer Fraud Act.  Defendants contend that Royale has failed to meet the heightened pleading standard of such a claim.

The New Jersey Consumer Fraud Act (the "CFA") provides that "[a]ny person who

suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."  N.J.S.A. § 56:8-19.  "The elements of a CFA claim are: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."  *Carton v. Choice Point*, 482 F. Supp. 2d 533, 535 (D.N.J. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)); *see also Prof'l Cleaning and Innovative Bldg. Services, Inc. v. Kennedy Funding, Inc.*, 245 F. App'x. 161, 165 (3d Cir. Aug 07, 2007) (citing *Carton*, 482 F. Supp. 2d at 535).  "The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.  The Act protects consumers from more than just shifty, fast-talking and deceptive merchants and sharp practices and dealings.  It also protects consumers from unfair practices 'even when a merchant acts in good faith.'"  *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004) (quoting *Cox*, 138 N.J. at 16).

KFI and the Wolfers, in their opening brief, argue that Royale's CFA claim should be dismissed because Royale has not sufficiently pled unlawful conduct by Defendants.  In support of this argument, Defendants place heavy emphasis on a decision by Judge Martini in another case in which KFI is the defendant.  *See Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, No. 05-2384, slip. op. at 5 (D.N.J. Dec. 30, 2005).[2]  Indeed, Defendants

---

[2] In their brief, Defendants quoted from Judge Martini's August 11, 2005 Opinion (Doc. No. 8) granting KFI's motion to dismiss, but the actual opinion attached as Exhibit F to the Kohane Certification was the December 30, 2005 Letter Opinion (Doc. No. 32), which denied

assert that "[t]he loan commitment in *Professional Cleaning* contained the essentially same provisions in the Commitment issued to Royale." (Defs.' Br. at 17.) Unfortunately for Defendants, this parallel between the instant matter and *Professional Cleaning* has resulted in Defendants being hoisted by their own petard here, because after the briefing in this matter was complete, the Third Circuit ultimately reversed the District Court in *Professional Cleaning* on the issue of whether the amended complaint "sufficiently pled a claim for common-law fraud and a claim under the New Jersey Consumer Fraud Act." *Prof'l Cleaning*, 245 F. App'x. at 162-63.

Prior to engaging in an analysis of the Third Circuit's decision in *Professional Cleaning*, this Court acknowledges the non-binding nature of non-precedential opinions. ("NPO"). *See In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) (reversing district court for relying on NPO).[3] Nevertheless, this Court notes the unique applicability of *Professional Cleaning* given the fact that it involves the same defendants as the instant matter and involves an almost identical contract with essentially the same terms in dispute. Moreover, Defendants in this matter have conceded the similarity between the instant matter and that case. Accordingly, this

_____

the plaintiff's request to file an amended complaint. The August 11 Opinion was never appealed, but the December 30 Letter Opinion was appealed, and the Third Circuit reviewed that Letter Opinion as the controlling decision on appeal. Accordingly, this Court will likewise refer to Judge Martini's December 30 Letter Opinion, rather than the erroneously quoted (and not attached) August 11 Opinion.

[3] In a footnote in their Reply Brief, Defendants criticize Royale for citing to the Third Circuit's Internal Operating Procedures pertaining to unpublished opinions. Specifically, Defendants assert that "[t]hose procedures do not prevent a party from citing [unpublished opinions]," which is undoubtedly a correct assertion on Defendants' part. (Defs.' Reply Br. at 3, n.3.) However, Defendants then incorrectly declare that such procedures "do not apply in this Court." (*Id*.). *See In re Grand Jury Investigation*, 445 F.3d at 276 ("Under [the Third Circuit's] Internal Operating Procedures, NPOs 'are not regarded as precedents that bind the court because they do not circulate to the full court before filing.' A fortiori, they are not precedents for the *district courts* of this circuit. ") (quoting 3d Cir. IOP 5.7 (July 1, 2002)) (emphasis added).

7

Court will utilize *Professional Cleaning* as a useful framework that offers highly persuasive reasoning, but this Court will continue to respect the singularly binding authority of published Third Circuit opinions.  Notably, this Court has not discovered any published Third Circuit opinion that conflicts with *Professional Cleaning* for the purposes for which that case is utilized in the instant matter.

Turning to the Third Circuit's decision in *Professional Cleaning*, the similarities are striking.  As the Court of Appeals explains, the "relationship between Professional and Kennedy soured after it became clear to Professional that, despite expressly discussing the need for a $1,800,000 loan . . . and, despite paying a non-refundable commitment fee of $54,000 prior to the appraisal of the . . . property, Professional was not going to get the amount of financing it needed for the . . . property–or its fee returned."  *Prof'l Cleaning*, 245 F. App'x. at 163.  Furthermore, there was a dispute between Kennedy and Professional regarding the proper valuation of the subject property, i.e., "appraised value" versus "as is market value."  As the panel in *Professional Cleaning* noted, the "as is market value" is "nebulously defined in the contract as 'a three (3) to four (4) month sale to a cash buyer.'"  *Id*. at 166.  Indeed, that is practically the same language at issue in the Loan Commitment between Royale and Defendants.

For example, here the Loan Commitment declares that "the basis of this Loan is the market value of the real estate Collateral as completed by KFI Loan proceeds.  Market value is defined as a three (3) to four (4) month sale to a cash buyer.  The Borrower understands that KFI will inspect the Collateral and, in its sole discretion, determine the 'as completed' value of the Collateral."  (Loan Commitment at 3.)  Royale has alleged that the definitions of the terms used in the Loan Commitment were not what it understood those terms to mean.  Furthermore, Royale

alleges that after KFI received the appraisal from C&W, KFI contacted Royale and "informed [Royale] that it should request an amendment to the 'loan commitment' to allow for an 'as entitled' appraisal as opposed to the originally agreed upon 'as completed' appraisal," but KFI did not inform Royale of the C&W appraisal prior to suggesting that Royale request a change to the terminology.  While some of these events regarding the change of terminology might have occurred subsequent to the signing of the Loan Commitment, Royale sufficiently alleges facts that, if true, permit Royale to proceed with its claim of fraud under the CFA.

Furthermore, the Complaint alleges that KFI was aware that Royale was under a contract to purchase the subject property for approximately $32,000,000, and that a loan of 60% of C&W's valuation of the property at $17,800,000 would not be even remotely close to what Royale needed to buy the property, much less to develop it into the intended condominiums.  As the Third Circuit noted in *Professional Cleaning*, a "loan for less would have been meaningless" because Royale "had turned to [KFI] as a lender of last resort."  *Prof'l Cleaning*, 245 F. App'x. at 168.  In addition, the Complaint alleges that during the several phone conversations prior to entering into the Loan Commitment, Defendants assured Royale that "any monies forwarded  . . . would be returned should the transaction not be consummated," (Compl. ¶ 23), yet the fees paid have not been returned, which as *Professional Cleaning* explains, "amounts to a bait-and-switch scheme" as alleged in the Complaint, *Prof'l Cleaning*, 245 F. App'x. at 168.

In essence, the averments made in the complaint in *Professional Cleaning* track remarkably closely to the allegations in Royale's instant Complaint.  For the same reasons that the *Professional Cleaning* panel concluded that such "allegations are sufficient to state an NJCFA claim," this Court concludes that Royale's allegations in the Complaint are likewise

sufficient to survive this motion to dismiss.  Accordingly, Count Seven will remain against all

Defendants, and Defendants' motion to dismiss will be denied.


### B.   Common Law Fraud (Count Six)

With respect to Royale's similar claim of common law fraud (Count Six), an essentially

identical analysis is employed to determine whether such claim satisfies the standard under Rule

12(b)(6).  "Legal fraud requires demonstration of five elements: (1) a material representation by

the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its

falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5)

resulting damage to the plaintiff."  *Weil v. Express Container Corp.*, 360 N.J. Super. 599 (App.

Div. 2003) (citing *Jewish Ctr. of Sussex Cty. v. Whale*, 86 N.J. 619, 624-25 (1981)); *see also*

*Prof'l Cleaning*, 245 F. App'x. at 166; *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182

(3d Cir. 1993).

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements on

allegations of common law fraud or mistake.  "In alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge,

and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).[4]

"Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud

with sufficient particularity to place the defendant on notice of the 'precise misconduct with

---

[4] This is the version of Rule 9(b) that became effective on December 1, 2007.  The prior
rule read: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake
shall be stated with particularity.  Malice, intent, knowledge and other conditions of mind of a
person may be averred generally."

which [it is] charged.'"  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).  "To satisfy this standard, the plaintiff

must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or

some measure of substantiation into a fraud allegation."  *Id*.  The same analysis with regard to

Royale's CFA claim applies here such that Royale's common law fraud claim also survives

Defendants' motion to dismiss.

Indeed, KFI has been sued so many times on similar Loan Commitments that it has, for

better or worse, generated its own body of law on the topic.  *See Kennedy Funding, Inc. v.

Ruggers Acquisition & Dev.*, No. 07-669, slip op. at 7-8 (D.N.J. July 31, 2007) (denying KFI's

motion to dismiss the counterclaims and third-party claims for common law fraud and violations

of the CFA); *Kimball Mgmt., LLC v. Kennedy Funding, Inc.*, No. 05-2506, Order (D.N.J. June

20, 2006) (denying KFI's motion to dismiss plaintiff's claims of fraud, civil RICO, breach of

contract, and breach of the covenant of good faith and fair dealing); *Nat'l Integrity Dev., Inc. v.

Kennedy Funding, Inc.*, No. BER-L-10489-97 (N.J. Super. Ct. Law Div. Feb. 1, 2001) (entering

judgment against KFI, but not Joseph Wolfer, for common law fraud).

Despite these cases against KFI, there are a number of cases in its favor.  *See JM Realty &

Inv., LLC v. Kennedy Funding, Inc.*, No. 07-218, slip op. at 4 (D.N.J. July 26, 2007) (granting

KFI's motion to dismiss plaintiff's claims of common law fraud and violations of the CFA);

*Kennedy Funding, Inc. v. Lion's Gate Dev., LLC*, No. 05-4741, slip op. at 13-14 (D.N.J. Apr. 18,

2006) (granting KFI's motion to dismiss the counterclaims and third-party claims of consumer

fraud and CFA violations).

Importantly, the cases decided in favor of KFI were decided before the Third Circuit's

11

decision in *Professional Cleaning*, and thus those courts were without the persuasive analysis provided by a panel of our Court of Appeals.  In addition, KFI points to the Third Circuit's unpublished opinion in *R.L. Wickman & Assocs. v. Kennedy Funding, Inc.*, 203 F.3d 817 (3d Cir. 1999) (Table), for the proposition that our Court of Appeals "expressly held that KFI did not commit fraud."  (Defs.' Reply Br. at 10.)  What KFI fails to acknowledge, however, is that the *Wickman* panel affirmed the district court's grant of *summary judgment*, which of course is an entirely different standard of review for both the Court of Appeals and the District Court in the first instance.  Accordingly, the decision in *Wickman* might become very important at a later point in this case, but now, at the motion to dismiss stage, it provides little in the way of persuasive authority.

For the same reasons stated above in the CFA claim analysis, and for the same reasons stated in *Professional Cleaning* as discussed above, Defendants' motion to dismiss the common law fraud claim will be denied.  Accordingly, Count Six will remain against all Defendants.

## C.    New Jersey RICO (Count One)

Defendants also move to dismiss Count One, which alleges violations of New Jersey's Racketeer Influenced and Corrupt Organizations Act (the "NJRICO Act" or the "Act").  N.J.S.A. § 2C:41-2.  Specifically, Defendants contend that Royale's Complaint fails to plead all of the necessary elements, namely the "enterprise" and "predicate acts" elements.

"It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity."

12

N.J.S.A. § 2C:41-2(c).  In other words, the NJRICO Act makes it a crime for a person to be employed by or associated with an "enterprise" and to engage or participate or become involved in the business of the enterprise "through a pattern of racketeering."  *State v. Ball*, 141 N.J. 142, 151 (1995).  While the NJRICO Act is a criminal statute, it provides civil remedies for its violation, *see* N.J.S.A. § 2C:41-4, and has the same definitions for relevant terms when implicated in a civil context, e.g., "enterprise" and "pattern of racketeering."  Furthermore, the Act itself declares that it is to be "liberally construed to effectuate [its] remedial purposes."  N.J.S.A. § 2C:41-6.  In addition, as the Supreme Court of New Jersey has recognized, the NJRICO Act, at its inception, paralleled the federal RICO Act.  *Ball*, 141 N.J. at 156.  The *Ball* court, however, also observed that the New Jersey legislature departed from the federal statute in "many respects," but the court nevertheless acknowledged that "because the federal statute served as an initial model for [the NJRICO Act], we heed federal legislative history and case law in construing [the New Jersey version]."  *Id.*  Accordingly, the *Ball* court relied on federal cases in interpreting the NJRICO Act, and this Court will do the same in appropriate circumstances, and where those federal cases do not conflict with any idiosyncracies of the New Jersey statute.  At the outset, this Court acknowledges the *Ball* court's explanation that "the New Jersey Legislature intended its RICO statute to be even broader in scope than the federal act."  *Id.* at 167.

In *Ball*, the Supreme Court of New Jersey held that "enterprise" is an element separate from the "pattern of racketeering activity."  The court explained that "[t]he enterprise is the association, and the pattern of racketeering activity consists of the predicate incidents."  *Ball*, 141 N.J. at 161-62.  Furthermore, the NJRICO Act uses the term "enterprise" "broadly to include any

group of persons 'associated in fact.'"  *Id.* at 161.  Importantly, a "person" includes "any individual or entity . . . capable of holding a legal or beneficial interest in property."  N.J.S.A. § 2C:41-1(b).  Thus, a corporation can be a person for purposes of an NJRICO Act claim.

While a corporation can be a "person," there is a distinctiveness requirement that prevents a plaintiff from filing a RICO claim against a corporation as both a "person" and as the "enterprise."  *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 268 (3d Cir. 1995) (holding, in federal RICO case, that "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient").  Instead, a viable NJRICO "action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'  But, alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement."  *Id*.  Importantly, the *Jaguar* court further held that a "corporation is an entity legally distinct from its officers or employees, which satisfies the 'enterprise' definition."  *Id*.  The Third Circuit explained that a "plaintiff can only recover against the defendant officers, and cannot recover against the corporation simply by pleading the officers as the persons controlling the corporate enterprise, since the corporate enterprise is not liable under [RICO] in this context.  Instead, a corporation would be liable under [RICO], only if it engages in racketeering activity as a 'person' in another distinct 'enterprise,' since only 'persons' are liable for violating [the statute]."  *Id*.

In the instant matter, Royale has alleged NJRICO claims against all three Defendants: KFI (the corporation), and the Wolfers (two individuals who own and run KFI).  From the face of Royale's Complaint, it appears that Royale is alleging that KFI is the "enterprise" and the Wolfers are the "persons."  But if that is the case, KFI cannot be liable because only persons are liable.  *See Elysian Fed. Sav. Bank v. First Interregional Equity Corp.*, 713 F. Supp. 737, 757

14

(D.N.J. 1989) ("An enterprise must exist separate and apart from the RICO defendant.").

Alternatively, if Royale is alleging that KFI is a person, as are the Wolfers, then it is unclear what

comprises the enterprise.  If there is no enterprise alleged, then the entire NJRICO count must be

dismissed against all Defendants.

Construing the Complaint in favor of the Plaintiff, this Court reads it as alleging that KFI

is the enterprise through which the Wolfers operated to effectuate their alleged NJRICO

violations.  Accordingly, the NJRICO count against KFI must be dismissed, but that count can

remain against the Wolfers, provided the "predicate racketeering acts" requirement is met.  *See*

*Longmont United Hosp. v. Saint Barnabas Corp.*, No. 06-2802, 2007 WL 1850881, at *10

(D.N.J. June 26, 2007) ("find[ing] that a RICO plaintiff cannot evade the distinctiveness

requirement by pleading a corporate enterprise composed solely of a combination of the

corporation and its subsidiaries, employees and/or agents"); *South Broward Hosp. Dist. v.

MedQuist Inc.*, 516 F. Supp. 2d 370, 389-90 (D.N.J. 2007) (granting motion to dismiss for failure

to plead distinction between the "person"–i.e., the parent corporation–and the "enterprise"–i.e.,

the association in fact between parent and subsidiary).

As previously noted, Defendants also contend that the NJRICO Act claim should be

dismissed because Royale has not alleged the commission of a predicate racketeering act in

connection with the issuance of the Loan Commitment.  Racketeering activity is defined by a list

of enumerated crimes, but also includes by reference "forgery and fraudulent practices and all

crimes defined in chapter 21 of Title 2C of the New Jersey Statutes."  N.J.S.A. § 2C:41-1(a)(o).

Royale relies on the N.J.S.A. § 2C:21-4 , which declares that "a person commits a crime of the

fourth degree if he falsifies, destroys, removes, conceals any writing or record, or utters any

writing or record knowing that it contains a false statement or information, with purpose to deceive or injure anyone or to conceal any wrongdoing."  Royale's Complaint alleges that "at the time [KFI] issued and/or uttered the 'loan commitment' to [Royale], [KFI] knew that [the Loan Commitment] contained a false statement or information."  (Compl. ¶ 167.)

Having incorporated by reference all previous paragraphs in the Complaint, it is a reasonable inference that Royale's NJRICO claim is premised upon statements in the Loan Commitment, namely those terms involving the valuation of the Florida property, as previously discussed.  Royale's allegations in this regard do not prove its case by any means, but such claims are pled with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *See Frederico*, 507 F.3d at 200; *see also Kennedy Funding, Inc. v. Ruggers Acquisition & Dev.*, No. 07-669, slip op. at 7-8 (D.N.J. July 31, 2007) (denying KFI's motion to dismiss NJRICO claims).  That is all that is required to survive a motion to dismiss in this context and thus the Wolfers' motion to dismiss the NJRICO count will be denied.  Accordingly, Count One will be dismissed against KFI, but will remain against the Wolfers.

### D.    Breach of Contract (Count Four) and Good Faith & Fair Dealing (Count Five)

The Wolfers, but not KFI, also move to dismiss the claims alleging breach of contract (Count 4) and breach of the covenant of good faith and fair dealing (Count Five).  The Wolfers have a singular argument: They are not parties to the Loan Commitment and therefore cannot be liable on the contract between Royale and KFI.  Royale responds that it can proceed with its

breach of contract claims against the Wolfers because there were "separate oral agreements between [Royale] and the Wolfers." (Royale Br. at 24.)  This bald assertion is insufficient to survive a motion to dismiss. "It is a basic tenet of corporate law that a corporation is an entity separate and distinct from its shareholders." *Kennedy Funding, Inc. v. Lion's Gate Dev., LLC*, No. 05-4741, slip op. at 13-14 (D.N.J. Apr. 18, 2006) (granting KFI's motion to dismiss the breach of contract and good faith counterclaims and third-party claims against the Wolfers). Indeed, in *National Integrity v. Kennedy Funding*, a case upon which Royale relies heavily for other arguments, the state court held that "there is no legal basis upon which to hold [Joseph] Wolfer liable individually in connection with this loan.  His personal participation in this loan was part of his position solely as an officer of KFI." *Nat'l Integrity Dev., Inc. v. Kennedy Funding, Inc.*, No. BER-L-10489-97 (N.J. Super. Ct. Law Div. Feb. 1, 2001) (entering judgment against KFI only for, *inter alia*, breach of contract, where Joseph, but not Jeffrey Wolfer was also sued).

The same is true in this case insofar as the Wolfers were not parties to the contract that Royale alleges was breached, i.e., the Loan Commitment.  Jeffrey Wolfer, as President of KFI, is the representative who signed the Loan Commitment, and therefore he cannot be liable for breach of contract in this circumstance where he simply signed on behalf of the corporate entity. Moreover, Joseph Wolfer's signature does not appear anywhere on the document.  Therefore, there is no basis upon which to hold Joseph Wolfer liable for breach of contract in this circumstance.  Accordingly, this Court will grant the Wolfers' motion to dismiss the breach of contract claims against them individually.  Counts Four and Five will remain against KFI as the party bound under the Loan Commitment.

E.    **Unjust Enrichment (Counts Two & Three)**

Royale, in Count Two, alleges unjust enrichment against Defendants for "accepting and retaining the advance fee as partial payment of certain of the fees that would be due upon the closing of the loan under the Loan Commitment." (Compl. ¶ 176.) Count Three also alleges unjust enrichment, but appears to be erroneously composed. Count Three contains ten separate paragraphs, the first six (¶¶ 183-88) of which are identical to the first six paragraphs (¶¶ 175-80) of Count Two. But things go awry at this point. Here are the next four paragraphs of Count Three:

189.    The express and/or implied contract between the Plaintiff and the KENNEDY FUNDING DEFENDANTS was aborted due to mistake, impossibility and/or by the breach of the KENNEDY FUNDING DEFENDANTS through no fault of the Plaintiff so as make their retention of the Plaintiff's advance fee unjust.

190.    Insofar as the KENNEDY FUNDING DEFENDANTS breached the express and/or implied loan agreement between themselves and J & M Development, allowing the KENNEDY FUNDING DEFENDANTS to retain Plaintiff's funds would amount to unjust enrichment.

191.    The express and/or implied contract between the Plaintiff and the KENNEDY FUNDING DEFENDANTS was aborted due to mistake, impossibility and/or by the breach of the KENNEDY FUNDING DEFENDANTS through no fault of the Plaintiff so as make their retention of the Plaintiff's advance fee unjust.

192.    Insofar as the KENNEDY FUNDING DEFENDANTS breached the express and/or implied loan agreement between themselves and the Plaintiff, allowing the KENNEDY FUNDING DEFENDANTS to retain Plaintiff's funds would amount to unjust enrichment.

(Compl. ¶¶ 189-92.) A number of problems jump off the page, starting with the listing in

18

paragraph 190 of "J & M Development," which appears to be an entity related to the plaintiff in another case in this district handled by the same plaintiff's counsel as in the instant matter.  *See JM Realty & Inv. v. Kennedy Funding, Inc.*, No. 07-218.[5]  Another problem is that even if this Court were to favorably construe the "J & M Development" error to mean the Plaintiff in this case, paragraph (¶ 190) would be identical to the last paragraph in Count Three, paragraph 192.  A third problem is that paragraphs 189 and 191 are identical.  Therefore, for purposes of clarity, the Court strikes paragraphs 190 and 191 as redundant to paragraphs 189 and 192.

Reading Count Three as reconstituted, it appears that it differs from Count Two insofar as it alleges unjust enrichment against Defendants for "breach[ing] the express and/or implied loan agreement," (Compl. ¶ 192), whereas Count Two alleges unjust enrichment against Defendants because the closing never occurred, which "was a precondition to the 'loan commitment' becoming a binding agreement," (Compl. ¶ 182).

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.  The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).  The phrase "beyond its contractual rights" implies that a benefit conferred upon a party to a contract that arguably provides for such benefit would not be recoverable in a quasi-contract claim such as unjust enrichment.  Indeed, "[w]here there is an express contract covering

---

[5] Indeed, paragraph 160 in the First Amended Complaint in *JM Realty* is identical to paragraph 190 in the instant Complaint.

the identical subject matter of the claim, plaintiff cannot pursue a quasi-contractual claim for

unjust enrichment."  *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540,

2005 WL 1199045, at *7 (D.N.J. May 18, 2005) (citing *Winslow v. Corp. Express, Inc.*, 364 N.J.

Super. 128, 143 (App. Div. 2003) ("In light of this express contract, there is no basis or need for

plaintiff to pursue a quasi-contractual claim for unjust enrichment.")); *see also Matter of Penn*

*Cent. Transp. Co.*, 831 F.2d 1221, 1230 (3d Cir. 1987) (applying similar Pennsylvania law in

rejecting unjust enrichment claim where express contract existed, and holding that "a contract

implied-in-law may not be found if there is an express contract on the same subject").

Royale attempts to cover all angles by asserting in one unjust enrichment count that no

contract exists and therefore Defendants have been unjustly enriched.  Royale then asserts in the

other unjust enrichment count that if there was a contract, Defendants breached it and therefore

they have been unjustly enriched.  It is clear that the subject matter of this dispute is covered by

an express contract: the Loan Commitment.  Accordingly, Royale's unjust enrichment claims

cannot proceed and Defendants' motion to dismiss Counts Two and Three will be granted.


### F.      Contract Validity Claims (Counts Eight, Nine, Ten, Eleven, & Twelve)

Plaintiff's remaining claims seek declaratory judgment or rescission of the contract on

grounds of invalidity.  Essentially, each of these Counts is an affirmative defense to a breach of

contract action, i.e., illusory contract, adequacy of consideration, unconscionability, and legal

impossibility.[6]  Defendants' entire argument on these Counts is grounded in an analysis based

---

[6] Note here too that in Count Ten, Royale's counsel appears to have carelessly utilized
language from another case by seeking "[r]escission of the agreement between KENNEDY
FUNDING INC. and J&M Development."  (Compl. Count Ten, "Wherefore" Clause ¶ b.)

upon the summary judgment standard.  For example, in response to Royale's allegation that he contract is illusory, Defendants assert that "Royale is simply wrong as a matter of undisputed fact and law." (Defs.' Br. at 20.)  Defendants then attempt to support this argument by pointing to Judge Debevoise's decision "denying [the plaintiff's] motion for *summary judgment*," and declaring that such a "holding was amply supported by the law." (*Id*. at 20-21.)  This Court has no doubt that Judge Debevoise's decision was supported by the law, but the question before this Court is whether Royale has *alleged sufficient facts* that would support its various contract validity claims.  Defendants have offered essentially nothing to defeat such claims at the motion to dismiss stage of this action.  Therefore, Defendants' motion to dismiss Counts Eight, Nine, Ten, Eleven and Twelve will be denied.

*Conclusion & Order*

For the foregoing reasons, it is hereby ORDERED that Defendants' motion (Doc. No. 7) is granted in part, and denied in part as follows:

1.      Defendants' motion to dismiss Counts Six and Seven is DENIED.

2.      Defendant Kennedy Funding, Inc.'s motion to dismiss Count One is GRANTED.

3.      Defendants Joseph Wolfer and Jeffrey Wolfer's motion to dismiss Count One is DENIED.

4.      Defendants Joseph Wolfer and Jeffrey Wolfer's motion to dismiss Counts Four and Five is GRANTED.  These two Counts will remain against Defendant Kennedy Funding, Inc.

5.      Defendants' motion to dismiss Counts Two and Three is GRANTED.

6.      Defendants' motion to dismiss Counts Eight, Nine, Ten, Eleven, and Twelve is DENIED.

Newark, New Jersey
February 19, 2008

                                        /s/ Harold A. Ackerman
                                        U.S.D.J.